**UEBELACKER, Appellant and Cross–Appellee,**

**v.**

**CINCOM SYSTEMS, INC. et al., Appellees and Cross–Appellants.**

[Cite as *Uebelacker v. Cincom Systems, Inc.* (1992), 80 Ohio App.3d 97.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910258, C–910364.

Decided Sept. 2, 1992.

98

*Tobias & Kraus* and *David Torchia,* for appellant and cross-appellee.

*Dinsmore & Shohl, Jerry S. Sallee* and *Gregory A. Harrison,* for appellee and cross-appellant Cincom Systems, Inc.

*White, Getgey & Meyer Co., L.P.A.,* and *Ronald A. Meyer,* for appellee and cross-appellant Frank H. Veith, Jr.

---

HILDEBRANDT, Judge.

Plaintiff-appellant and cross-appellee, Carl O. Uebelacker ("Uebelacker"), appeals from the judgment of the Hamilton County Court of Common Pleas in which the motion for a new trial or remittitur of the defendants-appellees Cincom Systems, Inc. ("Cincom") and Frank H. Veith, Jr. ("Veith"), collectively "appellees," was granted. We have assigned this court's case No. C–910258 to this appeal. The appellees appeal from that part of the trial court's judgment that denied their motions for directed verdict and judgment notwithstanding the verdict. To that appeal we have assigned this court's case No. C–910364. We have consolidated these appeals for purposes of briefing, argument and opinion. For the reasons that follow, we affirm the trial court's judgment in part, reverse it in part and remand the case for further proceedings.

On November 27, 1988, Uebelacker filed a complaint against Cincom (his employer) and Veith (his supervisor at Cincom), seeking damages for false imprisonment, assault and battery, defamation, wrongful termination, breach of express or implied contract, and intentional infliction of serious emotional distress. Cincom answered the complaint and denied Uebelacker's allegations. Veith answered and counterclaimed against Uebelacker for malicious prosecution. Following a period of discovery, the appellees jointly moved for summary judgment. Uebelacker moved for summary judgment as to Veith's counterclaim. The trial court granted summary judgment to the appellees on all claims advanced by Uebelacker. The court also granted summary judgment in favor of Uebelacker on Veith's counterclaim. Uebelacker and Veith appealed to this court. See *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 549 N.E.2d 1210. In our decision, we affirmed the trial court's judgment as it concerned Veith's counterclaim. However, we reversed the granting of summary judgment to the instant appellees regarding Uebelacker's claims for assault and battery, defamation, false imprisonment, promissory estoppel and emotional distress, and remanded the case to the trial court.

Trial commenced on May 7, 1990. At the conclusion of all the evidence, the appellees moved for a partial directed verdict as to the false-imprisonment and

defamation claims based upon a failure of Uebelacker's evidence. The trial court overruled the motion, stating that a ruling as a matter of law was precluded because resolution of the disputed issues depended on the weight rather than the sufficiency of the evidence.[1]

The jury received the case on May 16, 1990, and returned its verdicts on May 17, 1990.

Prior to returning its verdicts, the jury communicated questions to the trial court, which included the following: "Can we award punitive damages and only nominal compensatory damages?" The trial court responded:

"You cannot award punitive damages if you find that the plaintiff has failed to meet his burden of proof with respect to actual compensatory damages on his causes of action for (1) false imprisonment; (2) assault and battery; (3) intentional infliction of serious emotional distress; and (4) defamation. However, you may award punitive damages if you find that the plaintiff has met his burden of proof with respect to actual compensatory damages on any one of said four causes of action.

"With respect to nominal damages, please read jury instruction 25(D) on page 31."

The jury instructions were submitted to the jury in writing and may be found among the trial exhibits. Instruction 25(D) provides:

"If you find that any of the plaintiff's rights have been technically violated, but he has suffered no actual loss or has not produced the required evidence to prove his claims, then you may award nominal damages. Such damages are limited to some small or nominal amount in terms of money, generally a dollar."

Thereafter, the jury returned its verdicts in which it concluded, *inter alia,* that Uebelacker was not an employee at will, but that the appellees had cause to discharge him. The jury further determined that the appellees were guilty of false imprisonment, intentional infliction of serious emotional distress and defamation. The jury determined that the appellees' actions were malicious. The jury awarded Uebelacker $100 on each of the above claims and punitive damages totalling $90,000.[2] The jury further concluded that Uebelacker was

---

1. The record discloses that it was the appellees' intention to file a written motion for a directed verdict with the trial court. Indeed, the record indicates that counsel for Cincom handed a document to the trial judge. However, no such motion is of record. Furthermore, arguments on that motion, if any, were not transcribed.

2. See R.C. 2315.21, effective January 5, 1988, which provides, *inter alia,* that entitlement to punitive damages must be demonstrated by clear and convincing evidence. Further, the factfinder determines plaintiff's entitlement to punitive damages and the trial court deter-

entitled to an award of attorney fees. The jury found for the appellees on Uebelacker's assault-and-battery and wrongful-discharge claims.

On June 1, 1990, the appellees filed a joint motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial or remittitur. Uebelacker filed his memorandum in opposition on July 20, 1990. The appellees filed their reply memorandum on August 10, 1990.

On December 4, 1990, the trial court overruled the appellees' motion for judgment notwithstanding the verdict. However, the court granted the remittitur and reduced the punitive-damage award to $10,000. The trial court also awarded Uebelacker attorney fees in the amount of $7,500.

On March 7, 1991, a judgment entry was placed of record memorializing the action taken by the trial court. In this entry the court further provided that "[i]n the event that plaintiff does not assent to the remittitur of the punitive-damage award, the court hereby orders a new trial with regard to the same."

From that judgment both Uebelacker and the appellees have filed timely appeals, each asserting two assignments of error.

Because Uebelacker's first assignment of error and part of the second assignment asserted by appellees in the cross-appeal pertain to the punitive-damage award, we address them jointly. Uebelacker claims that the jury's $90,000 assessment for punitive damages was neither excessive nor the product of passion and prejudice and that, therefore, the trial court erred by reducing that award. The appellees, on the other hand, contend that the jury's compensatory award of $100 for each of the three tort claims constituted mere nominal damages from which punitive damages could not have been assessed and that, therefore, the trial court erred by refusing to grant judgment notwithstanding the verdict as to the punitive-damage award.

As noted *supra,* during its deliberations, the jury asked the trial court whether it could award punitive damages with nominal compensatory damages. The court answered in the negative and directed the jury to review that portion of the jury instructions defining nominal damages. In granting the appellees' request for remittitur, the trial court stated:

"[This] case is not one in which low compensatory damages and high punitive damage are to be considered *in and of themselves,* nor one in which a large disparity is *standing alone.* [Rather,] the jury's expression of intent in the query to the court coupled with the prompt return of the verdict * * * cannot be viewed as other than a response motivated by passion and prejudice

---

mines the amount of such damages. Since this cause of action arose prior to the effective date of R.C. 2315.21, the statute has no application here. See *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 38, 543 N.E.2d 464, 467.

on the part of the jury in its attempt to award excessive punitive damages."
(Emphasis *sic*.)

Upon Uebelacker's failure to accept the remittitur, the trial court ordered a
new trial.

Courts are not encouraged to substitute their judgment for that of
juries. Remittitur is only proper where a court can affirmatively find that the
jury's verdict is manifestly excessive. *Toledo, Columbus & Ohio River RR.
Co. v. Miller* (1923), 108 Ohio St. 388, 140 N.E. 617; *Jones v. Gray Drug Fair,
Inc.* (Nov. 16, 1990), Ashtabula App. No. 89-A-1465, unreported, 1990 WL
178941. Excessive damages can only be determined from reviewing the
weight and sufficiency of the evidence. *Schendel v. Bradford* (1922), 106
Ohio St. 387, 140 N.E. 155.

In *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464,
syllabus, the Ohio Supreme Court held that a jury verdict as to punitive
damages which is not a result of passion and prejudice or prejudicial error
should not be reduced on appeal. There, the jury's award to the plaintiff of
$250 compensatory damages and $150,000 in punitive damages was upheld in
an action arising out of a verbal altercation over the release of a car which
was repaired by the defendant car dealership. After concluding that the
evidence supported the finding of actual malice needed to assess punitive
damages, the court turned to the issue of whether the amount awarded for
punitive damages was excessive, and stated at 40, 543 N.E.2d at 469:

"Low compensatory damages and high punitive damages assessed by a jury
are not in and of themselves cause to reverse the judgment or to grant a
remittitur, since it is the function of the jury to assess the damages and,
generally, it is not for a trial or appellate court to substitute its judgment for
that of the trier of fact. A large disparity, standing alone, is insufficient to
justify a court's interference with the province of the jury."

In the instant action, it was established that during the months
preceding Uebelacker's termination, the professional and personal relationship
between Uebelacker and Veith had begun to deteriorate. Veith prepared and
submitted to Uebelacker a written "warning of dismissal," which prompted
Uebelacker to draft a memorandum disputing the contentions contained in
Veith's warning. Uebelacker met with Veith's supervisors at Cincom to
discuss the increasing friction between the pair, and apprised them, as well as
Cincom clients, of Veith's tendency to abuse alcohol while both on and off the
job. In light of these facts and other testimony pertaining to Uebelacker's
dismissal, we conclude that sufficient evidence was adduced to support the
jury's determination that the events surrounding the termination of Uebelack-

er's employment was the product of ill will, hatred and/or revenge necessary to support a punitive-damage award. See *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174.

Moreover, we cannot say that the jury's verdict was manifestly excessive in light of the facts of the case *sub judice.* While the amount of punitive damages was thirty times the amount of compensatory damages awarded, we note that the punitive-damage award in *Villella, supra,* was sixty times greater than the compensatory award, under circumstances we perceive to be no more egregious than those in the instant action. The reasoning espoused by the trial court in the case at bar for reducing the jury's award of punitive damages—that the jury returned its verdict within minutes of asking the court whether it could award punitive damages if only nominal damages were awarded—is not sufficient to justify its conclusion that the jury was influenced by passion and prejudice in rendering an award that was manifestly excessive. Accordingly, the trial court erred in ordering the remittitur and in ordering a new trial when the remittitur was not accepted by Uebelacker. Uebelacker's first assignment of error is sustained.

■ Additionally, we reject appellees' attempt to characterize the jury's compensatory award of $100 per tort claim as "nominal" damages. Contrary to appellees' assertion, the jury's questions regarding nominal damages, the court's response, and the amount ultimately awarded demonstrate that the jury did not intend to award mere nominal damages. The trial court made it clear in answering the jury's question that nominal damages may not serve as a predicate for punitive damages. The court referred the jury to Instruction 25(D) regarding nominal damages. The instruction said that nominal damages are generally "one dollar." The jury, after having their question answered and being referred to the appropriate instruction, returned an amount one hundred times greater than the amount suggested in the instruction for nominal damages. Clearly, had the jury intended to award only "nominal" damages it would not have ignored the court's answer to its question or the instruction. Appellees' second assignment of error, as it pertains to punitive damages, is accordingly overruled.

■ Uebelacker's second assignment of error alleges that the trial court erred by awarding attorney fees without considering all of the appropriate factors.

As we discussed above, the jury recommended that Uebelacker be awarded attorney fees. The trial court, after granting the remittitur and reducing the punitive-damage award to $10,000, set the attorney-fee award at $7,500 based upon its own "observation of the obvious skill and professional expertise

demonstrated in the case \* \* \* plus the result obtained for [Uebelacker]." The trial court did not hold a hearing on this issue.

■■■■■ Ohio law recognizes that when punitive damages are properly assessed, the aggrieved party may also recover reasonable attorney fees. *Columbus Finance, Inc. v. Howard* (1975), 42 Ohio St.2d 178, 71 O.O.2d 174, 327 N.E.2d 654. However, such fees are not recoverable absent detailed evidence regarding the amount and value of the legal services rendered and the charges normally made for such services. The factors to be considered when awarding attorney fees are: (1) the time and labor involved in maintaining the litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of the litigation. *Hutchinson v. J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St.3d 195, 17 OBR 432, 478 N.E.2d 1000. Additional factors to consider are "the fee customarily charged in the locality for similar legal services [and] the amount involved and the results obtained." *Villella v. Waikem Motors, Inc., supra,* 45 Ohio St.3d at 41, 543 N.E.2d at 470 (citing DR 2–106[B] ). Also, there must be evidence presented at trial concerning the reasonableness of attorney fees in order to allow an award. *Hutchinson, supra.*

It is clear from the record *sub judice* that the trial court failed to review and apply the relevant factors discussed above prior to rendering its award for attorney fees. Neither party presented any evidence regarding attorney fees, and the trial court essentially conceded that "little, if any, evidence is in the record" regarding the value of the legal services performed. Accordingly, the trial court's award of attorney fees cannot stand, see *Villella, supra,* and we sustain Uebelacker's assignment of error.

A portion of appellees' second assignment of error urges that the trial court erred by failing to grant their motion for judgment notwithstanding the verdict on the issue of attorney fees. This assignment, which is premised upon appellees' assertion that Uebelacker was not entitled to an award for punitive damages, must fail in light of our disposition of the previous assignments involving the issue of punitive damages.

■■■■ The final assignment before us, the appellees' first assignment of error, contends that the trial court erred by not granting the appellees' motions for directed verdict and/or judgment notwithstanding the verdict regarding Uebelacker's claims of intentional infliction of emotional distress, false imprisonment, and defamation.

The same test is used for a motion for judgment notwithstanding the verdict and a motion for a directed verdict. The trial judge must construe the evidence most strongly in favor of the non-movant, and if there is substantial evidence to support the non-movant's position upon which reasonable minds may differ, the motions must be denied. *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 183, 532 N.E.2d 162, 164. The trial judge does not determine the weight of the evidence or the credibility of the witnesses, and although the judge examines the materiality of the evidence, he does not look at the conclusions to be drawn. *Id.*

In the case at bar, evidence was presented to establish that on November 29, 1984, Veith and two other Cincom employees of large stature [3] arrived at Uebelacker's cubicle in Cincom's offices. Veith told Uebelacker that he was terminated from Cincom. Veith handed Uebelacker a box in which to place his belongings. Veith told Uebelacker that after he collected his belongings he would be escorted from Cincom's premises.

When Uebelacker attempted to leave the cubicle in order to go to the personnel department, one of the individuals accompanying Veith blocked Uebelacker's path. Veith grabbed Uebelacker by the arm and spun him around, an allegation which Veith denied. Uebelacker then attempted to telephone the personnel office. However, Veith terminated the call by pushing the receiver button. When Uebelacker requested to use the restroom, Veith initially refused. However, Veith eventually granted Uebelacker's request and Uebelacker was escorted to and from the restroom.[4] Uebelacker testified that other employees observed the termination process, which lasted approximately an hour, and which Uebelacker found extremely humiliating.

After Uebelacker had packed his belongings, he was escorted from the building to where his automobile was parked in Cincom's parking lot. One employee placed the box containing Uebelacker's possessions in the trunk of the automobile after which Uebelacker drove to the front of Cincom's office building and made his way to the personnel office.

Uebelacker testified that for approximately one year after the termination process, he suffered bouts of depression. Further, he withdrew from his family and his many civic activities. Uebelacker testified that in his opinion, the major cause of his emotional distress was the manner in which he was terminated as opposed to the fact that he was terminated. However, he acknowledged that losing his employment also was a factor that caused him to be depressed. Uebelacker estimated that from January 1985 to May 1985 the

---

**3.** Uebelacker was 5'11" tall and weighed one hundred ninety-five pounds.

**4.** Veith and the employees waited outside the restroom door.

termination process was responsible for sixty to eighty percent of his emotional distress.

Upon our review of the record, we cannot say that the trial court erred, as a matter of law, when it denied the appellees' motions for directed verdict and judgment notwithstanding the verdict. The record contains substantial evidence upon which reasonable minds could have reached differing conclusions regarding the false-imprisonment claim, see *Feliciano v. Kreiger* (1977), 50 Ohio St.2d 69, 4 O.O.3d 158, 362 N.E.2d 646, the emotional-distress claim, see *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, and the defamation claim, see *Baby Tenda of Greater Cincinnati v. Taft Broadcasting* (1989), 63 Ohio App.3d 550, 552, 579 N.E.2d 522, 523. This assignment is overruled.

In summation, we have sustained Uebelacker's first and second assignments of error. We have overruled the appellees' assignments of error.

The judgment of the Hamilton County Court of Common Pleas is reversed in part in case No. C–910258, and this cause is remanded for reinstatement of the jury's award of punitive damages in the amount of $90,000, and for further proceedings consistent with this opinion and law on the assessment of attorney fees against the appellees. That part of the judgment appealed in case No. C–910364 is affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

Utz and Gorman, JJ., concur.