OPINION
Appellant Nationwide Care, Inc. d.b.a. Cambridge Health Care Center, Inc. ("Cambridge") is appealing the verdict rendered in the Guernsey County Court of Common Pleas. The following facts give rise to this appeal.
Appellee Albert Blancett commenced this action on June 26, 1996, following the death of his eighty-two year old wife, Mary Blancett. On October 30, 1995, Mrs. Blancett fell, at Cambridge nursing home. On November 6, 1995, Mrs. Blancett suffered a second fall, striking her head and suffering a subdural hematoma. As a result of the falls, Mrs. Blancett died on November 22, 1995. Appellee's complaint alleges the following causes of action: common law nursing home negligence, nursing home negligence pursuant to R.C. 3721.13 and R.C. 3721.17, and wrongful death of Mary Blancett.
Appellant subsequently filed a partial motion for summary judgment on July 18, 1997. The trial court denied appellant's motion on August 20, 1997. The trial of this matter commenced on November 18, 1997. On November 21, 1997, following jury deliberations, the jury returned a verdict, in the amount of $168,298.35, in favor of appellee and against appellant on appellee's negligence claim and against appellee on appellee's wrongful death claim. Following the jury's award of compensatory damages, the trial court commenced a second phase of the trial to address punitive damages. The jury returned a verdict for punitive damages, against appellant, in the amount of $850,000.
On December 8, 1997, appellant filed a motion for judgment notwithstanding the verdict, new trial, or alternatively, for remittitur. Appellee filed a motion for attorney's fees on December 4, 1997. The trial court issued a judgment entry on February 4, 1998. The trial court granted attorney's fees, ordered a remittitur of punitive damages, if accepted by appellee, or otherwise a new trial on punitive damages, and entered final judgment. Appellant timely filed a notice of appeal and appellee filed a cross-appeal. The parties set forth the following assignments of error for our consideration:
 I. HOUSE BILL 357 MANDATES § 2315.21 OF THE OHIO REVISED CODE APPLIES TO ANY AWARD OF PUNITIVE OR EXEMPLARY DAMAGES UNDER § 3721.17(I). AS THE JURY IN THIS CASE HAS CONCLUDED THAT THE REQUIREMENTS OF § 2315.21 HAVE NOT BEEN MET, CAMBRIDGE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE PUNITIVE DAMAGE CLAIM.
 II. EVEN ASSUMING THE LEGISLATURE HAD NOT CHANGED THE LAW WHICH APPLIES TO THIS PENDING CASE, THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND/OR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON THE ISSUE OF PUNITIVE DAMAGES, AS OHIO LAW REQUIRES PROOF THAT A DEFENDANT ACTED WITH ACTUAL MALICE BEFORE THE IMPOSITION OF PUNITIVE DAMAGES, OTHERWISE THE ORIGINAL § 3721.17(I) IS IN VIOLATION OF OHIO LAW AND THE OHIO AND FEDERAL CONSTITUTIONS.
 III. PLAINTIFF'S ATTORNEY FEES AWARD SHOULD BE REVERSED, AND PLAINTIFF SHOULD ONLY RECEIVE ATTORNEY'S FEES, NOT FIGURED ON A CONTINGENCY FEE BASIS, BUT, RATHER, CALCULATED BY THE NUMBER OF HOURS REASONABLY EXPENDED IN THE CASE TIMES A REASONABLE HOURLY FEE REGARDING ONLY THE SUCCESSFUL CLAIMS.
 Cross-Appeal I. THE TRIAL COURT ABUSED ITS DISCRETION IN RULING THAT THE JURY'S AWARD OF PUNITIVE DAMAGES WAS EXCESSIVE AND IN ORDERING REMITTITUR. THUS, THIS COURT SHOULD REINSTATE THE JURY VERDICT FOR PUNITIVE DAMAGES AND, PURSUANT TO CIVIL RULE 60(B), MAKE A CLERICAL CORRECTION TO REFLECT AN AWARD OF ATTORNEY FEES EQUALING ONE-THIRD OF THE TOTAL REINSTATED JURY VERDICT.
 I
Appellant maintains, in its first assignment of error, that H.B. 357 mandates that R.C. 2315.21 apply to any award of punitive damages under R.C. 3721.17(I). We disagree.
In support of this argument, appellant cites the language contained in R.C. 3721.17(I), which provides:
 (I)(1) Any resident whose rights under sections 3721.10 to 3721.17 of the Revised Code are violated has a cause of action against any person or home committing the violation. The action may be commenced by the resident or by the resident's sponsor on behalf of the resident.
 (2)(a) If compensatory damages are awarded for a violation of the resident's rights, section 2315.21 of the Revised Code, except divisions (E)(1) and (2) of that section, shall apply to an award of punitive or exemplary damages for the violation.
Appellant further maintains R.C. 3721.17(I)(2)(a) is applicable pursuant to R.C. 3721.17(I)(3), which states:
 (3) Division (I)(2)(a) of this section shall be considered to be purely remedial in operation and shall be applied in a remedial manner in any civil action in which this section is relevant, whether the action is pending in court or commenced on or after the effective date of this amendment.
The revised version of R.C. 3721.17 became effective on July 9, 1998. Appellant claims that pursuant to R.C. 3721.17(I)(3), appellee had to establish he was entitled to punitive damages under the standard contained in R.C. 2315.21. This statute requires a plaintiff to establish, by clear and convincing evidence, actual malice, before punitive damages are recoverable. The jury, in the case sub judice, found in interrogatory number one that appellant's actions were not committed with actual malice toward appellee's decedent. Therefore, appellant claims absent a finding of actual malice, as required by R.C. 2315.21, appellee was not entitled to an award of punitive damages.
In determining whether, R.C. 3721.17, as amended on July 9, 1998, is applicable to this case, we refer to the case of VanFossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100. UnderVan Fossen, we must first determine whether the statute in question is applicable if all other constitutional criteria are met. Section (I)(3) of the statute clearly provides that the operation of the statute applies to any civil action which is pending in a court or commenced on or after the effective date of the amendment.
As in the matter currently before the Court, in Van Fossen, the trial court entered final judgment prior to the effective date of the statute in question. However, the Supreme Court of Ohio found the phrase "pending in any court" to also include a case pending in the court of appeals until the rendering of final judgment. The Court based its conclusion on the fact that a case remains "pending" until final judgment is entered. The Court concluded that since Section 3(B)(3), Article IV of the Ohio Constitution vests, in the courts of appeals, the authority to render a final judgment, a case remains "pending" even after a trial court enters final judgment, provided a timely notice of appeal is filed. The Court explained:
 It has long been established that an appeal is merely a proceeding in the original cause which `has the effect of continuing the cause and suspending or vacating the decree of the inferior tribunal until the cause is heard in the appellate court.' Van Fossen at 103-104, citing Heirs of Ludlow v. Kidd's Executors
(1828), 3 Ohio 541, 547-548; Charles v. Fawley (1904), 71 Ohio St. 50, 53-54.
Appellee filed its notice of appeal on February 26, 1998. The new statute became effective on July 9, 1998, prior to the rendering of our decision in this matter. Therefore, the revised version of R.C. 3721.17 is applicable if all other constitutional criteria are met.
Under Van Fossen, since we found appellee's claim to be a "pending action", we must next address whether R.C. 3721.17 may be applied to causes of action which accrued prior to its effective date. Prior to addressing the issue of whether a statute may be constitutionally applied retroactively, we must first determine, under R.C. 1.48, whether there is a clear indication of retroactive application. R.C. 1.48 provides that: "A statute is presumed to be prospective in its operation unless expressly made retrospective." A review of R.C. 3721.17(I)(3) clearly indicates the General Assembly's intent that this statute be applied retroactively.
Since R.C. 3721.17 meets the threshold requirement of R.C.1.48, we must next determine whether the statute violates the ban of retroactive legislation as prohibited by Section 28, Article II
of the Ohio Constitution. This section of the Ohio Constitution provides:
 The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.
Under this constitutional analysis, we must determine whether the statute is "substantive" or "remedial". The Court, in VanFossen, defined the terms "substantive" and "remedial" as follows:
 [A] statute is substantive when it does any of the following: impairs or takes away vested rights, * * *, affects an accrued substantive right, * * *, imposes new or additional burdens, duties, obligations or liabilities as to a past transaction, * * *, creates a new right out of an act which gave no right and imposed no obligation when it occurred, * * *, creates a new right, * * *, gives rise to or takes away the right to sue or defend actions at law, * * *. On the other hand, remedial laws are those affecting only the remedy provided. These include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right. [Footnote omitted.] * * * [L]aws which relate to procedures are ordinarily remedial in nature [Citations omitted.] * * * including rules of practice, courses of procedure and methods of review [Citations omitted.] * * *. Van Fossen at 107-108.
A statute that is purely remedial does not violate Section28, Article II of the Ohio Constitution. We find R.C. 3721.17 to be substantive because R.C. 3721.17(I)(3) imposes a new, more difficult burden of proof upon a plaintiff attempting to recover punitive damages under R.C. 3721.17(I)(2)(a). Since this statute limits a substantive right, it is a retroactive law prohibited by Section 28, Article II of the Ohio Constitution. Therefore, R.C.3721.17(I) cannot be retroactively applied to appellee's cause of action and the jury did not have to find appellant acted with actual malice before awarding punitive damages to appellee.
Appellant's first assignment of error is overruled.
 II
In its second assignment of error, appellant contends that even if R.C. 3721.17(I) does not apply to this case, Ohio law still requires proof of actual malice before the imposition of punitive damages otherwise, there exists a violation of Ohio law and the Ohio and Federal Constitutions. We disagree.
The trial court denied appellant's argument that a plaintiff must establish actual malice, by clear and convincing evidence, even under the former version of R.C. 3721.17, on the basis of this Court's decision in Slagle v. Parkview Manor, Inc. (Oct. 7, 1983), Stark App. Nos. 6155, 6159, unreported. In Slagle, this Court held:
 In our view, the statute would have been pointless and unnecessary to enact if it merely restated the common law. We find R.C. 3721.17(I) clearly and simply gives `any residents whose rights * * * are violated * * *' a cause of action for which the court award actual and punitive damages for violation of the rights. The statute says so in those simple words and we think that is what the legislation was intended to accomplish. In short, we think the right to punitive damages flows directly and simply from the failure to furnish `adequate and appropriate care' and we do hold. We hold this to be true even where it be assumed arguendo that the evidence did not justify a finding of malice or an award of punitive damages under a common law theory. We add, incidentally, that the procedural posture of this appeal does not require us to decide whether the evidence in this case shows malice or supports punitive damages under a common law theory. Id. at 4.
This Court's decision, in Slagle, is based upon the prior version of R.C. 3721.17(I). This version of the statute provided, in pertinent part:
 (I) Any resident whose rights under section 3721.10
to 3721.17 of the Revised Code are violated has a cause of action against any person or home committing the violation. The action may be commenced by the resident or by his sponsor on his behalf. The court may award actual and punitive damages for violation of the rights. The court may award to the prevailing party reasonable attorney's fees limited to the work reasonably performed. (Emphasis added.)
Under the plain language of the statute, punitive damages may be awarded to a nursing home resident upon a showing that the resident received inappropriate or inadequate medical treatment or nursing care. Appellee contends, and we agree, under R.C.2315.21, the punitive damages statute, the General Assembly recognized an exception to the actual malice requirement. Section (D) of this statute provides:
 (D) This section does not apply * * * to the extent that another section of the Revised Code expressly provides any of the following:
 (1) Punitive or exemplary damages are recoverable from a defendant in question in a tort action on a basis other than that the actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, * * *.
We affirm our previous decision in Slagle, pursuant to R.C.2315.21(D), as former R.C. 3721.17(I) clearly permits an award of punitive damages merely for the violation of a nursing home resident's rights. Therefore, R.C. 2315.21 has no application in this case.
In support of this assignment of error, appellant also sets forth two constitutional arguments. First, appellant contends the award of punitive damages, under R.C. 3721.17(I), without the requirements and parameters of R.C. 2315.21, violates the due process and equal protection provisions of the Ohio and United States Constitutions. We will first address appellant's equal protection argument. We begin by noting that legislative enactments enjoy a presumption of constitutionality. State exrel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. We "* * * must, to the extent reasonably possible, construe a statute so as to uphold a challenged statute if at all possible." Van Der Veer v. Ohio Dept. of Transp.
(1996), 113 Ohio App.3d 60, 64.
The analysis for due process and equal protection are almost identical except that legislation reviewed under equal protection involves a classification. Id. "A statutory classification which involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clauses of the Ohio and United States Constitutions if it bears a rational relationship to a legitimate governmental interest." Id., citing Menefee v. Queen City Metro
(1990), 49 Ohio St.3d 27, 29. Appellant does not argue a suspect class is involved.
We also find the award of punitive damages does not involve a fundamental right. In State v. Benson (1992), 81 Ohio App.3d 697,701, the court addressed the definition of "fundamental rights". "Fundamental rights have been defined by the United States Supreme Court as `those fundamental liberties that are implicit in the concepts of ordered liberty such that neither liberty nor justice would exist if they were sacrificed.' " [Citations omitted.] A fundamental right also exists in `those liberties that are deeply rooted in this Nation's history and tradition.' [Citations omitted.] In Shamblin's Ready Mix, Inc. v. Eaton Corp. (C.A.4, 1989), 873 F.2d 736, 742, the court explained that the amount of exemplary damages is not a fundamental element of the trial. It is a remedy in the nature of a penalty designed to punish and deter reprehensible conduct. Therefore, a plaintiff has no "right" to punitive damages.
Since neither a suspect class nor a fundamental right is involved, we must analyze appellant's claim under a rational basis test. Van Der Veer at 65, citing State ex rel. Abde v. Police Firemen's Disability Pension Fund (June 25, 1996), Franklin App. No. 96APD02-126, unreported. "Under a rational basis analysis, a statutory classification does not violate equal protection if it bears a rational relationship to a legitimate governmental interest." Van Der Veer at 65, citing Roseman v. Firemen Policemen's Death Benefit Fund (1993), 66 Ohio St.3d 443. The rational basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational. Van Der Veer at 65, citingBuchman v. Wayne Trace Local School Dist. Bd. Of Edn. (1995),73 Ohio St.3d 260, 267.
Clearly, the state has a valid interest in permitting the award of punitive damages solely for the violation of a nursing home resident's rights. By permitting the award of punitive damages, without requiring a plaintiff to establish actual malice, the state promotes a legitimate interest in protecting elderly citizens in nursing homes.
We also find the means by which the state chose to advance that interest is rational. "The policy for awarding punitive damages in Ohio `* * * has been recognized * * * as that of punishing the offending party and setting him up as an example to others that they might be deterred from similar conduct.' "Preston v. Murty (1987), 32 Ohio St.3d 334, 335. Although the General Assembly enacted the Ohio Nursing Home Residents' Bill of Rights, to protect the rights of nursing home residents, the General Assembly recognized that as a business, nursing homes would respond to the deterrent effect of punitive damages by making those nursing homes that violate a resident's rights an example to others in the business. We find the award of punitive damages under R.C. 3721.17(I), without the requirements and parameters of R.C. 2315.21, is rationally related to a legitimate governmental interest. Therefore, appellant's equal protection argument must fail.
We will now address appellant's due process argument. Since neither a suspect class nor a fundamental right is involved, we must apply a rational basis test. "A rational basis analysis provides that when a statute is challenged on due process grounds, it will be deemed valid if it (1) bears a real and substantial relation to the public health, safety, morals or general welfare of the public and (2) if it is not unreasonable or arbitrary. VanDer Veer at 67, citing Mominee v. Scherbarth (1986), 28 Ohio St.3d 270,274. Obviously, the protection of nursing home residents is a consideration that bears a real and substantial relation to the general welfare of the public. Therefore, the challenged statute is not unreasonable or arbitrary. As such, appellant's due process argument must also fail.
Appellant's second assignment of error is overruled.
 III
In its final assignment of error, appellant maintains the award of attorneys' fees should be reversed and appellee should only receive attorneys' fees based upon the number of hours expended in the case times a reasonable hourly rate rather than on a contingency fee basis. We agree.
Former R.C. 3721.17(I) permits the award of reasonable attorney's fees, to the prevailing party, limited to the work reasonably performed. The award of attorney's fees is discretionary with the trial court. Therefore, we will not reverse the award of attorneys' fees, in this matter, unless we find the trial court abused its discretion. An abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In analyzing this assignment of error, we rely upon the case of Landis v. Grange Mutual Insurance Co. (Feb. 21, 1997), Erie App. No. E-96-034, unreported. In Landis, the Sixth District
Court of Appeals stated:
 In a contingency fee agreement, the parties are the attorney and his client. As long as there is no overreaching in the negotiations, such contracts are seldom disturbed. An adversary, however, is not involved in these negotiations and is not a party to the contract. Consequently, it is fundamentally unfair to hold an adversary to someone else's bargain. Id. at 5.
The court explained that a contingency fee arrangement may be a reasonable and proper measure for attorney's fees. However, before a trial court adopts a private contingency fee agreement, as the basis of an award of attorney's fees, the trial court must consider the factors contained in DR2-106 (1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; (2) customary fees in the locality for similar legal services; (3) result obtained; and (4) experience, reputation and ability of counsel. Id. at 4, citing Yarber v. Cooper (1988),61 Ohio App.3d 609, 615 quoting Pyle v. Pyle (1983), 11 Ohio App.3d 31,35. In addition to these four factors, we find the trial court should also consider the other four factors contained in DR2-106.
In the case sub judice, there is no indication the trial court considered the factors contained in DR2-106 when it awarded attorneys' fees based upon the contingency fee agreement entered into between appellee and his attorneys. We therefore affirm appellant's third assignment of error and remand this issue to the trial court for the court to make findings of fact consistent with DR2-106.
Appellant also argues that appellee's counsel should not receive attorneys' fees for time spent on unsuccessful claims. In support of this argument, appellant cites to the case of Fenton v.Query (1992), 78 Ohio App.3d 731. The Fenton case addresses the award of attorney's fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, Section 1988, Title 42 and applies federal case law. We find Fenton inapplicable to the case sub judice. The trial court should proceed, in determining attorneys' fees, based upon the analysis contained in Landis.
Appellant's third assignment of error is sustained.
 Cross-Appeal
In his sole assignment of error, under his cross-appeal, appellee maintains the trial court abused its discretion when it ordered the remittitur of the jury's award of punitive damages. We disagree, but find it necessary to remand the issue of remittitur to the trial court for further consideration.
Prior to addressing the trial court's grant of remittitur, we must address the language contained in the trial court's judgment entry granting remittitur. The trial court stated:
 In accord with Ohio Law, this Court modifies the Jury's verdict as to punitive damages on the condition that the Plaintiff accept the remittitur of this Court in modifying the punitive damage award. The remittitur must be accepted by the Plaintiffs within thirty days of the date of this Entry or a new jury trial should be conducted only on the issue of punitive damages. Judgment Entry, Feb. 4, 1998, at 4-5.
Although appellant filed its notice of appeal prior to the expiration of this thirty-day period provided for in the trial court's judgment entry, we find appellee could still have accepted the remittitur had he desired to do so. During the pendency of an appeal, the trial court continues to have jurisdiction over the action, so long as the exercise of that jurisdiction does not interfere with the power of the appellate court to review the judgment under appeal and affirm, modify or reverse that judgment.Buckles v. Buckles (1988), 46 Ohio App.3d 118, 120. Appellee did not accept the remittitur, within the time period allotted by the trial court, and we will therefore address this issue on appeal.
This Court thoroughly addressed the concept of remittitur in the case of Betz v. Timken Mercy Medical Center (1994), 96 Ohio App.3d 211, discretionary appeal disallowed, 71 Ohio St.3d 1436, motion for reconsideration denied, 71 Ohio St.3d 1467. In Betz, we explained:
 Fundamental to our justice system is the right to a jury of our peers. It is in their collective wisdom that the parties place their trust. We must be `guided by a presumption that the findings of the trier-of-fact were indeed correct.' Seasons Coal, 10 Ohio St.3d at 80, 10 OBR at 410, 461 N.E.2d at 1276. Also, `It is the function of the jury to assess the damages, and generally, it is not for a trial court or appellant (sic) court to substitute its judgment for that of the trier-of-fact.' Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40, 543 N.E.2d 464, 469.
 Though the trial court is prohibited from substituting its own judgment as to damages for that of the jury, the jury's decision is not inviolate. The legal concept of remittitur was developed to provide the trial court with the procedural mechanism by which it could adjust or correct an unjust award. However, prior to doing so, the damages awarded by the jury must be `so manifestly against the weight of the evidence to show a misconception by the jury of its duties.' Howard v. City Loan Savings (Mar. 27, 1989), Greene App. No. 88-CA-39, unreported, at 6-7, 1989 WL 33137. `Remittitur is only proper where a court can affirmatively find that the jury's verdict is manifestly excessive.' Uebelacker v. Cincom Systems, Inc. (1992), 80 Ohio App.3d 97, 103, 608 N.E.2d 858, 862. See, also, Scott v. Hall (Sept. 9, 1988), Montgomery App. No. 10921, unreported, at 5, 1988 WL93668.
 While recognizing the above presumption in favor of sustaining the jury's verdict, we must also be cognizant of our standard of review in this case. At issue is whether, given the deference the trial court was required to give to the jury's verdict, the trial court abused its discretion in granting the remittitur. To demonstrate an abuse of discretion, it must be shown that the trial court's decision was unreasonable, arbitrary or unconscionable. In re Adoption of Ridenour
(1991), 61 Ohio St.3d 319, 320, 574 N.E.2d 1055, 1057.
It is under this analysis we review the trial court's decision to grant remittitur in this case. The trial court awarded compensatory damages, to appellee, in the amount of $168,298.35 and punitive damages in the amount of $850,000. The trial court remitted the award of punitive damages to $504,000 on what it found to be the disparate relationship between the award of compensatory damages and punitive damages. The trial court noted that the award of punitive damages was more than five times the award of compensatory damages. Judgment Entry, Feb. 4, 1998, at 3. The trial court also commented on the fact that the jury did not find appellant acted with actual malice and concluded that in comparing the culpability of appellant's conduct, the desirability of discouraging continuation of similar conduct, the impact on the parties and appellee's net earnings in 1993 and 1994, the proper ratio of punitive damages to compensatory damages should be three to one. Id. at 4.
In Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, the Ohio Supreme Court held, "A jury verdict as to punitive damages which is not the result of (1) passion and prejudice or (2) prejudicial error will not be reduced on appeal." Id. at syllabus. A large disparity between compensatory damages and punitive damages, standing alone, is insufficient to justify a trial court's interference with the province of the jury. Id. at 40. While there is no rigid mathematical standard to determine proportionality, awards of punitive damages must not be so disproportionate to the actual damages as to indicate they are the result of passion and prejudice rather than reason on the part of the jury. Gray v. Allison Div., Gen. Motors Corp. (1977),52 Ohio App.2d 348, 358-359. The amount of punitive damages award should be neither more nor less than is sufficient to achieve the goals of deterrence and punishment. Villella at 50.
In remitting damages in the case sub judice, the trial court never found that the award of punitive damages was the result of passion and prejudice or prejudicial error. Instead, the trial court focused almost exclusively on the disparity between compensatory and punitive damages which we find is not a proper basis for remitting punitive damages. The trial court also reviewed the appellant's conduct and stated that the evidence established appellant did not have a fall prevention policy; appellant did not have a policy to insure the nurse's aides received information about a resident's condition; and appellant did not have a policy that allowed nurses' aides to look at the patient's records that would alert them to particular needs, including the need to prevent falls. Judgment Entry, Feb. 4, 1998, at 2. The trial court concluded this conduct, by appellant, did not support the amount of punitive damages awarded by the jury.
In Fromson Davis Co. v. Reider (1934), 127 Ohio St. 564, paragraph three of the syllabus, the Ohio Supreme Court explained:
 In order to determine whether excessive damages were so influenced [by passion or prejudice], a reviewing court should consider, not only the amount of damages returned and the disparity between the verdict and remittitur where one had been entered, but it becomes the duty of such court to ascertain whether the record discloses that the excessive damages were induced by * * * misconduct on the part of the court or counsel, or * * * by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of [punitive] damages that should be awarded.
The trial court did not address the factors of passion and prejudice or prejudicial error as required by the Ohio Supreme Court in Villella. We therefore remand this matter to the trial court for the court to consider whether the award of punitive damages was the result of passion and prejudice or prejudicial error in addition to the other factors contained in Villella.
Cross-appellant's assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
By: Wise, J., Farmer, P. J., and Hoffman, J., concurs in part and dissents in part.