**Beth A. AKER, Plaintiff**

v.

**NEW YORK AND COMPANY, INC., Defendant.**

**No. 3:04 CV 7684.**

United States District Court, N.D. Ohio, Western Division.

March 17, 2005.

Francis J. Landry, Wasserman, Bryan, Landry & Honold, Toledo, OH, for Beth A. Aker, Plaintiff.

John Gerak, Vorys, Sater, Seymour & Pease LLP, Cleveland, OH, Robert A. Harris, Vorys, Sater, Seymour & Pease, Columbus, OH, for New York and Company, Inc., dba Lerner New York, Inc., Defendant.

## ORDER

CARR, Chief Judge.

This is a multi-count diversity suit by plaintiff Beth A. Aker against her former employer, New York and Company, Inc. (N.Y. & Co.). Plaintiff claims she was unjustly terminated and seeks relief under Ohio statutory law for reverse racial discrimination and under Ohio common law for a public policy tort, intentional infliction of emotional distress, defamation, invasion of privacy, battery, and false imprisonment. Plaintiff is a citizen of Ohio. Defendant is a Delaware corporation with its principal place of business in New York. This court has jurisdiction pursuant to 28 U.S.C. § 1132.

Pending is defendant's motion to dismiss plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the motion shall be granted in part and denied in part.

## Background

Plaintiff, a Caucasian, was employed by defendant as a store manager. Defendant had a policy regarding suspected shoplifters that required, before an employee could take action in response to apparent shoplifting, the employee had to: see the customer take merchandise; know that it was taken, when it was taken, and where it was taken; know that the shopper did not dispose of the item; know that the customer did not pay for the item; and have another witness view the incident.

On November 10, 2003, plaintiff suspected two customers, one male and one female, of shoplifting based on an incident that had occurred two days earlier. Plaintiff approached the suspected shoplifters. An altercation ensued between her, them, and another store associate. A security officer intervened and the customers left.

Plaintiff reported the incident to an African–American loss prevention officer. Plaintiff claims that the loss prevention officer distorted the report so that plaintiff would be terminated.

On November 23, 2003, plaintiff met with the district sales manager. Plaintiff told the district sales manager that the report was inaccurate. Nonetheless, the manager terminated the plaintiff during this meeting. As the plaintiff was leaving the store after being terminated, the manager detained plaintiff and physically searched her purse, coat, bags, and person.

## Discussion

A motion to dismiss, pursuant to Fed. R.Civ.P. 12(b)(6), questions the sufficiency of the pleadings. "[T]he court must consider as true the well-pleaded allegations

of the complaint and construe them in the light most favorable to the plaintiff." *Varljen v. Cleveland Gear Co.*, 250 F.3d 426, 429 (6th Cir.2001). No complaint shall be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.1988) (quoting *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir.2000).

### 1. Public Policy Tort

■ Plaintiff alleges that defendant wrongfully discharged her in violation of the public policy in favor of workplace safety. The four elements plaintiff must allege to state a claim for wrongful discharge in violation of public policy are:

1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

2. That dismissing employees under the circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (jeopardy element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked knowledge overriding legitimate business justification for the dismissal (overriding justification element).

*Collins v. Rizkana*, 73 Ohio St.3d 65, 69, 652 N.E.2d 653 (1995).

■ The clarity and jeopardy elements are questions of law that I must decide. *Id.* at 70, 652 N.E.2d 653. The "factual issues relating to the causation and overriding justification elements [are] generally for the trier of fact to resolve." *Id.*

The Ohio Supreme Court has recognized the public policy favoring workplace safety as a basis for a wrongful discharge claim. *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St.3d 77, 760 N.E.2d 385 (2002) (Syllabus, ¶ 1). That court has also made clear that such claim is limited to situations where plaintiff is discharged for complaints of unsafe working conditions that violate federal or Ohio statutory standards governing workplace safety. *See id.* at 79–80, 760 N.E.2d 385.

■ The circumstances giving rise to plaintiff's complaint fail to fit this model. Plaintiff alleges she feared for her personal safety as a result of defendant's policy regarding shoplifters. Plaintiff does not allege that her termination resulted from a report about unsafe working conditions that violated federal or Ohio law.

Defendant's policy reduces the risks of confrontation and potential violence that may result from confronting suspected shoplifters. Penalizing the defendant for enforcing its policy would be contrary to the public policy favoring workplace safety. Plaintiff's discharge fails to satisfy the clarity element of the public policy tort favoring workplace safety.

Plaintiff's complaint also fails to allege facts showing "that dismissing employees under the circumstances involved in plaintiff's dismissal would jeopardize the public policy." *Collins*, 73 Ohio St.3d at 69, 652 N.E.2d 653. The Sixth Circuit recently explicated this element, stating that "employers must receive notice that they are no longer dealing solely with an at-will employee, but with someone who is vindicating a governmental policy." *Jermer v. Siemens Energy & Automation, Inc.*, 395 F.3d 655, 659 (6th Cir.2005). To effectuate such notice "[the employee's] statements must indicate to a reasonable employer that he is invoking governmental policy in

support of, or as the basis for, his complaints." *Id.*

Nothing in plaintiff's complaint indicates that plaintiff told defendant that, if she was terminated, defendant would be violating the Ohio public policy favoring workplace safety. Because plaintiff did not put the defendant on notice that her termination would be contrary to Ohio public policy, she has not plead facts sufficient to establish the jeopardy element.

Defendant's motion to dismiss plaintiff's claim for violation of public policy favoring workplace safety shall be granted.

### 2. Reverse Racial Discrimination

Plaintiff alleges defendant violated O.R.C. § 4112.02(A) by discharging her on the basis of race. Ohio Courts have applied federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to cases involving alleged violations of O.R.C. § 4112.02(A). *Bushman v. Mid–Ohio Regional Planning Comm.*, 107 Ohio App.3d 654, 662, 669 N.E.2d 305 (1995); *Johnson v. General Motors Corp.*, 2001 WL 1913820 (Ohio App.).

■ To establish a prima facie case of reverse racial discrimination plaintiff must show that: 1) "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994) (quoting *Parker v. Baltimore and Ohio Railroad Co.*, 652 F.2d 1012, 1017 (D.C.Cir.1981)), and 2) the employer treated differently employees who were similarly situated but not members of the protected class. *Id.* (citing *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir.1985)). These requirements modify the requirements set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* at 801–02, 93 S.Ct. 1817.

Defendant contends that plaintiff has failed to establish a prima facie case for reverse racial discrimination. For purposes of a motion to dismiss a complaint need not include specific facts establishing a prima facie case of discrimination under the *McDonnell Douglas* framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992. Because the *McDonnell Douglas* framework does not apply in every employment discrimination case and the precise requirements of a prima facie case may vary depending on the context, "the ordinary rules for assessing the sufficiency of the complaint apply." *Id.* at 511, 122 S.Ct. 992.

■ Plaintiff states a claim on which relief can be granted for reverse racial discrimination. In ¶ 10 of her complaint, plaintiff alleges that defendant, acting through an African American loss prevention manager, distorted a shoplifting investigation to procure the termination of plaintiff, a Caucasian. Plaintiff further alleges that the manager intentionally discriminated against her on the basis of race. These allegations suffice to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512, 122 S.Ct. 992 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Defendant's motion to dismiss plaintiff's claim for reverse racial discrimination shall be denied.

### 3. Intentional Infliction of Emotional Distress

Plaintiff alleges that defendant engaged in outrageous conduct and intentionally caused her severe emotional distress during the course of her employment. As a result of the alleged distress caused by

defendant, plaintiff claims that she has lost employment opportunities, suffered intimidation, and ridicule, and great mental and emotional stress and anxiety.

■■■ To state a claim for intentional infliction of emotional distress plaintiff must allege facts sufficient to establish that: 1) the defendant intended to cause the plaintiff serious distress; 2) its conduct was extreme and outrageous; and 3) its action was a proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994). The intentional infliction of emotional distress does not have to be associated with another tort or result in physical injury. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983). Furthermore, liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 375, 453 N.E.2d 666.

■■■ Paragraph thirteen of plaintiff's complaint alleges that "during the course of her employment" the defendant "engaged in outrageous conduct beyond all possible bounds of decency" and intentionally "caused her severe emotional distress." While plaintiff's allegations are conclusory, it does not appear beyond doubt that she can prove no set of facts that defendant's actions were extreme and outrageous. *Michaels Bldg. Co., supra,* 848 F.2d at 679.

Defendant's motion to dismiss plaintiff's claim for intentional infliction of emotional distress shall be denied.

### 4. Invasion of Privacy

Plaintiff alleges in ¶ sixteen of her complaint that, following her termination on or about November 25, 2003, and while leaving defendant's store, the district sales manager subjected her to an unreasonable and unwarranted search of her purse, coat,

bags, and person. Plaintiff claims that private facts were publicized during this search, and that, as a result, facts relating to her termination and departure from the store were placed in a false light.

The Ohio Supreme Court recognized three types of invasion of privacy actions: 1) unwarranted appropriation or exploitation of ones's personality; 2) publicizing one's private affairs with which the public has no legitimate concern; and 3) wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities; commonly referred to as the exploitation, publicity, and intrusion. *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340, (1956) (Syllabus, ¶ 2). The Court specifically declined to add "false light" to this list. *Yeager,* 6 Ohio St.3d at 372, 453 N.E.2d 666.

■■■ Plaintiff's complaint alleges only publicity and intrusion. To recover under the publicity theory:

> 1) there must publicity; 2) the facts disclosed must be those concerning the private life of an individual, not his public life; 3) the matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; 4) the publication must have been made intentionally, not negligently; and 5) the matter publicized must not be a legitimate concern to the public.

*Killilea v. Sears, Roebuck & Co.,* 27 Ohio App.3d 163, 499 N.E.2d 1291, (1985) (Syllabus, ¶ 1).

■■■ The complaint alleges that the search itself was "conduct" that publicized facts relating to plaintiff's termination and her departure from the store. Any act that communicates information to a third party constitutes a publication, and therefore conduct alone is sufficient to establish

a publication. *Hecht v. Levin,* 66 Ohio St.3d 458, 460, 613 N.E.2d 585 (1993). The remaining elements are adequately alleged, and therefore a publicity invasion of privacy action can be sustained.

■ To recover under the intrusion theory, a party must show that a defendant "intentionally intrudes, physically or otherwise, upon the solitude or seclusion" of his or her "private affairs or concerns," and that the "intrusion would be highly offensive to a reasonable person." *Sustin v. Fee,* 69 Ohio St.3d 143, 145, 431 N.E.2d 992 (1982).

■ Plaintiff's complaint alleges that defendant intentionally detained her without cause and proceeded to search her purse, coat, bags, and person outside the entrance of the store and in full view of the public. These allegations, if proven, could satisfy elements of intrusion and therefore an intrusion invasion of privacy action can be sustained at this juncture.

Defendant's motion to dismiss count four of the complaint shall be denied.

### 5. Battery

■ To establish a claim for battery, a party must show that the defendant: 1) intended to cause harmful or offensive contact; and 2) that harmful contact resulted. *Love v. City of Port Clinton,* 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988). Offensive contact is defined as "contact which is offensive to a reasonable sense of personal dignity." *Id.*

■ Plaintiff's complaint states a claim for battery. She asserts that, in searching her purse, coat, bags, and person, the district sales manager offensively touched her and that this conduct was offensive to her reasonable sense of personal dignity. It does not appear that plaintiff can prove no set of facts to support this claim. *Michaels Bldg. Co., supra,* 848 F.2d at 679.

Defendant's motion to dismiss count five of the complaint shall be denied.

### 6. Defamation

Paragraph twenty-two of the complaint alleges that by and through the conduct of defendant's district sales manager, defendant has "defamed plaintiff's character and damaged her reputation as a competent and honest employee ... and, otherwise, as an honest and upright individual." Such defamation occurred, the plaintiff alleges, as a result of her having been escorted from the store and subject to the search of her person and effects in full view of other employees and others in the area of the mall where those actions occurred. Plaintiff alleges that those who saw these events "were aware of the nature of the intrusive search" of her person. (Doc. 1, ¶ 22).

■ An action for defamation must include the following:

(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Servs., Inc.,* 81 Ohio App.3d 591, 601, 611 N.E.2d 955 (1992).

■ The first requirement for a defamation action is that a "false and defamatory statement concerning another" be made. *Id.* Plaintiff does not allege an oral or written statement was made during the search. She asserts, rather, that defendant's conduct constituted both a "statement," and a "publication." Ohio courts have upheld claims of defamation based on conduct. *See Uebelacker v. Cincom Systems, Inc.,* 80 Ohio App.3d 97, 105, 608 N.E.2d 858 (1992).

Publication can be made through any act that communicates information. *Hecht*, 66 Ohio St.3d at 460, 613 N.E.2d 585. I conclude that the publication element has been pled adequately. This is so, though proof that those who observed the incident drew an adverse inference about the plaintiff's character may be difficult to establish. *See Paolucci v. Robinson Memorial Hosp.*, 1995 WL 236743, *5 (Ohio App. 11 Dist.) (plaintiff escorted from place of employment failed to "demonstrate third-party understanding of the actionable nature" of the conduct).

Defendant's motion to dismiss count six of the complaint shall be denied.

### 7. False Imprisonment

Paragraph twenty-five of plaintiff's complaint alleges that she was detained by the district sales manager when she was subjected to a search of her purse, coat, bags, and person. She also claims in ¶ twenty-five that her detention and the search were falsely instigated and constitute false imprisonment.

The Ohio Supreme Court defines false imprisonment as the intentional confinement of another "without lawful privilege and against his consent within a limited area for any appreciable time, however short." *Bennett v. Ohio Dept. of Rehab. and Corr.*, 60 Ohio St.3d 107, 109, 573 N.E.2d 633 (1991) (quoting *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71, 362 N.E.2d 646 (1977)).

 Confinement to a limited area is a key element for false imprisonment; without it a claim for false imprisonment is deficient. The alleged confinement here occurred at the entrance to defendant's store and in the shopping mall. While it appears that this is not a "limited area," at this stage I cannot say "beyond doubt that plaintiff can prove no set of facts" to support this element of false imprisonment. *Michaels Bldg. Co., supra*, 848 F.2d at 679.

Defendant's motion to dismiss count seven of the complaint shall be denied.

### Conclusion

In light of the foregoing it is hereby

ORDERED THAT defendant's motion to dismiss be granted with regard to plaintiff's claim of public policy tort be, and the same hereby is granted, and denied as to all other claims.

So ordered.