OPINION
{¶ 1} This is an appeal and cross-appeal from a directed verdict as to Appellants' claims and the denial of summary judgment motions of Appellee-Cross Appellant.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In 1994, Appellee-Cross Appellant, Continental Builders, Inc., (Continental) constructed a home for Appellants (Van Beusecums).
 {¶ 3} During construction, Appellants complained of water and mud seeping through the basement walls.
 {¶ 4} Further, after moving into the home the following year, they again asserted that water was entering the basement and that a portion of the front sidewalk had fallen into a sinkhole.
 {¶ 5} A settlement agreement was reached in 1995 with suit filed subsequently and another settlement agreement in 2000, which called for dismissal with four years to refile if the water and other problems were not solved.
 {¶ 6} Van Beusecums refiled suit in 2001 alleging continuing water problems and mold. Five causes of action were stated in the complaint.
 {¶ 7} Civil Rule 56 Motions were filed based on the settlement agreement, res judicata and the double dismissal civil rule.
 {¶ 8} At the close of Van Beusecums' case, the court directed a verdict in favor of Continental.
 {¶ 9} Van Beusecums assert one assignment of error:
 ASSIGNMENTS OF ERROR {¶ 10} I. "The trial court erred in granting a directed verdict in favor of Defendant-Appellee at the close of plaintiffs' case. [TR., Vol. III, pp. 575-580.]"
 {¶ 11} Continental raises four assignments of error in its cross appeal:
 {¶ 12} I. "The trial court erred in overruling defendant-Appellee/Cross-Appellant's motion for summary judgment based upon mutual settlement agreement dated July 21, 1995.
 {¶ 13} II. "The trial court erred in overruling defendant-Appellee/Cross-Appellant's second motion for summary judgment based upon mutual settlement agreement dated July 21, 1995.
 {¶ 14} III. "The trial court erred in failing to grant defendant-Appellee/Cross-Appellant's motion for a directed verdict on alternative bases.
 {¶ 15} IV. "The trial court erred in overruling defendant-Appellee-Cross Appellant's motion for summary judgment on counts I, II, III and IV based upon res judicata and the double dismissal rule."
 I. {¶ 16} The standard of review for the grant or denial of a motion for directed verdict is: whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169,172.
 {¶ 17} The court's judgment entry of directed verdict is based upon the following decisions which were included by reference in such entry of January 14, 2004:
 {¶ 18} "* * *, based upon the testimony of this case and this record, to go through them specifically, Count One alleges breach of contract. The court feels if you construe the evidence most favorable in light of the plaintiff's case, that there is no evidence that Continental Builders breached the contract. First of all, there is no evidence that they in this [SIC], as to their deviating from the contract, and it's the court's understanding from the testimony, that the architect was the one who had chosen the plans and were not drawn by Continental. There is no evidence in this record that the plaintiffs' plans were not followed.
 {¶ 19} "The court directs a verdict for the defendant as to Count One.
 {¶ 20} "Count Two, which alleges that they agreed to construct the home in a workmanlike manner, there's no question under Ohio law they do this whether it's in the contract or not in the contract. However, the court has heard no evidence that specifies what a workmanlike manner was in 1994, 1995, in Delaware County, Ohio, or that they deviated from the workmanlike manner, and in fact, the word workmanlike manner and/or standard of care has not been raised with any witness that the court heard.
 {¶ 21} "So the court grants a verdict as to Count Two for the defendant.
 {¶ 22} "Count Three, which alleges that they were negligent in their construction of the home. Again, the court has heard no evidence that sets forth a standard of care of the Delaware community in 1995 through today. In fact Mr. Sheppard was very specific that at the time this house was constructed, what was done was according to code. He did not know whether or not the plans and/or the code were not followed.
 {¶ 23} "Court therefore, as to Count Three directs a verdict in favor of the defendant.
 {¶ 24} "Count Four, it's the court's understanding it's the plaintiffs' claim that this is not an intentional act but the negligent act that caused the nuisance. Again, the court has heard no evidence that would establish a duty or what that duty was, no definition of the word duty. Since the courts deal with probabilities, not possibilities, the court feels it would be improper without that evidence to allow a jury to speculate as to what caused or did not cause the alleged nuisance.
 {¶ 25} "Therefore, the court directs a verdict on Count Four as to or in favor of the defendant.
 {¶ 26} "Count Five, which is based upon a breach of the February 2000 settlement agreement. There is no testimony in this record that the court could find, it went back over my notes again, that says that what Continental allegedly did in violating or breaking, breaching the February 2000 settlement agreement that caused mold. The mold appeared. The court is not aware of any case law that says that a contractor is a guarantor or there's absolute liability because mold appears after a contractor does an act. There is no evidence that they did anything negligently; there is no evidence they did anything contra to what the agreement was.
 {¶ 27} "The court therefore directs a verdict as to Count Five in favor of the defendant."
 {¶ 28} As stated, the complaint stated five causes of action, to-wit:
 {¶ 29} Breach of contract in failing to construct the home free of water problems with such asserted to be a nuisance; a second breach of contract claim as to failure to meet workmanlike standards and negligent construction; the third cause stated negligence in failing to complete the home free of defects; the fourth cause specifically alleged nuisance and failure to abate; the fifth referred to the settlement agreement of February, 2000, with breach thereof asserted and included allegations of extreme mold developing due to such breach with property loss.
 {¶ 30} In reviewing Appellants' sole assignment of error, we must review again the prior history between the parties and the complaint and then analyze the evidence presented and the court's consideration thereof.
 {¶ 31} As stated heretofore, Appellants entered into a contract with Appellee in 1994 to construct a home on their lot in accordance with the plans previously prepared for Appellants.
 {¶ 32} During and subsequent to work performed by Appellee, water problems through the foundation walls occurred, certain I-beams became twisted. Also, Appellant testified as to mold occurring.
 {¶ 33} As the sole assignment of error relates to the directed verdict as to each of the five causes of action of the complaint, we must examine the court's decision relative to the evidence presented as to the separate rulings as to each of such causes of action.
 {¶ 34} The court based its decisions on the fact that the plans being followed had not been prepared by Appellee and that no deviation from such plans were shown to have occurred. We must disagree. Notwithstanding the content of the plans, there is an implied warranty that the home will be constructed in a workmanlike manner.
 {¶ 35} As stated in Floyd v. United Home Improvement Center
(1997), 199 Ohio App.3d 716:
 {¶ 36} "Once a builder undertakes a construction contract, common law imposes upon him a duty to perform in a workmanlike manner.
 {¶ 37} "To prevail on a negligence claim for failure to perform in a workmanlike manner, a plaintiff must show by a preponderance of the evidence that the defendant failed to exercise ordinary care and skill, and such failure proximately caused the damages.
 {¶ 38} "Plaintiffs in workmanlike-construction cases are not always required to present expert testimony to prove builder's deviation from common standards of workmanship or failure to exercise ordinary care."
 {¶ 39} The Court in Kemper v. Builders Square, Inc. (1996),109 Ohio App.3d 127, 671 N.E.2d 1104, reiterated such principle:
 {¶ 40} "Expert testimony, or any testimony at all, is not always required to establish standard of care, and even where not all of factors involved as to how standard of care should be exercised are obvious to, or readily understandable by, lay jury, affirmative evidence of standard of care is not necessarily required.
 {¶ 41} "Except for professional malpractice cases, there is no general rule or policy requiring expert testimony as to standard of care."
 {¶ 42} The Ohio Supreme Court also spoke on the requirement of a workmanlike standard in Mitchem v. Johnson (1966),7 Ohio St.2d 66:
 {¶ 43} "The requirement of workmanlike performance from builder who sells uncompleted structure with agreement to finish structure as part of executed contract for purchase and sale of real estate is no more than that which law imposes on builder of structure on land owned by another, unless a high duty may be fairly implied from terms of contract itself."
 {¶ 44} There was sufficient evidence for a jury to determine if such workmanlike standard had not been met, notwithstanding the lack of testimony as to a standard of workmanship in Delaware County.
 {¶ 45} Also, while the court found no evidence indicating the plans were not followed, such plans did not call for a wet basement. Even Mr. Metzger of Appellee stated (Tr. 559) that he was hired to produce a dry basement.
 {¶ 46} As to the second cause of action, the court stated that even Mr. Shepherd testified that the code was followed. However, at pages 367-368 of the transcript he stated that the foundation walls were not in compliance with C.A.B.O. Code. He also testified as to a wall bowing in, which can be viewed as the lack of compliance with accepted workmanship as the plans, notwithstanding for whom prepared, did not call for this.
 {¶ 47} Going to the court's ruling as to Count Five, referencing the settlement agreement of 2000, the court found no breach had been proven.
 {¶ 48} Such agreement essentially provided for the elimination of the water problem in addition to other matters. Since evidence was presented as to the continuation of it, a jury could determine that such agreement in that respect was breached. Whether the mold and damages flowing therefrom was the result of the water was also a jury question.
 {¶ 49} We therefore sustain Appellants' Assignment of Error.
 CROSS-APPEAL I., II., IV. {¶ 50} Appellee's First, Second and Fourth Assignments of Error all relate to the denial of C.R. 56 motions.
 {¶ 51} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Civ. R. 56(C) states, in pertinent part:
 {¶ 52} Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 53} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
 {¶ 54} It is based upon this standard we review these three of Appellee's Assignments of Error.
 {¶ 55} In the absence of some knowledge or event which would relieve the contractor from producing a substantially dry basement, as a matter of law the workmanlike standard of construction, no matter in which county the home is being constructed, a jury question arises as to whether such contract has been breached.
 {¶ 56} We shall address Cross-Appellant's Assignments of Error Nos. I, II and IV simultaneously as each to go the standards applicable to Civ. R. 56.
 {¶ 57} The first summary judgment motion as to the July 21, 1995 settlement agreement was decided by Judge Shaw who stated:
 {¶ 58} "Defendant contends the Agreement provides two bases upon which to sustain its instant Motion for Summary Judgment. First, Defendant relies upon language in the Agreement apparently releasing it from any and all obligations arising prior to entering the Agreement. Additionally, Defendant relies upon provisions of the Agreement it asserts amounts to an irrebuttable presumption that Plaintiffs accepted the subject house in the condition existing at the time Plaintiffs moved into the house. Consequently, resolution of Defendant's Instant Motion requires construing and interpreting the provisions of a contract — i.e. Agreement.
 {¶ 59} Courts must resolve the construction of contracts as a matter of law. Long Beach Association vs. Jones (1998),82 Ohio St.3d 574, 576. Primarily, the responsibility of the court is to ascertain and determine the intent of the parties from the express language of the contract. Hamilton Insurance Services v.Nationwide Insurance Companies (1999), 86 Ohio St.3d 270, 273. Where the provisions of the contract are clear and unambiguous the court must give effect to the intention of the parties as set forth in the express language of the contract. Foster WheelerEnviresponse, Inc. v. Franklin County Convention FacilitiesAuthority (1977), 78 Ohio St.3d 353, 361. However, where an ambiguity resides in the language of the contract, or the language of the contract is unclear, determining the intent of the parties becomes a question of fact for the trier of fact at trial. Valmac Industries, Inc. v. Ecotech Machiner, Inc.
(2000), 137 Ohio App.3d 408 (2000); LeLux v. Chernick (1997),119 Ohio App.3d 10.
 {¶ 60} "The provision of the Agreement Defendant initially relies upon states that `[t]he parties agree that no remaining items of dispute regarding construction under the [the original building contract] that have been previously raised * * * Van Beusecum agree that they hereby waive and release Continental Builders from any obligation regarding any items of dispute raised by them to the date of this Agreement, except for punch list items.' Defendant asserts that at the time the parties entered the Agreement Plaintiffs had raised the issue of wetness and leakage of water into the basement of the Van Beusecums' home. Thus, having raised the same issue currently pressed in the instant case prior to entering the Agreement, Defendant contends the above quoted provision precludes Plaintiffs from pursuing the litigation concerning the issue of water leaking from the basement walls and foundation of their home.
 {¶ 61} "The difficulty in determining whether or not the initial provision Defendant relies upon precludes the instant litigation lies in the fact that the Agreement fails to expressly define the `items of dispute' on the date the parties entered the Agreement. In other words, it is not clear from the provisions of the Agreement whether or not the express terms of the Agreement contemplated the defects alleged by the Plaintiffs. The Agreement states that an item of dispute previously raised was `for example purposes only and not as limitation: wetness in basement.' Plaintiffs do allege in their Complaint `severe water problems in the basement.' However, Plaintiffs further allege in their Complaint that these water problems resulted from defects in the construction of the basement walls of their home. The language of the Agreement, however, fails to give any indication as to the source of the `wetness in basement.' As a result, it can not be determined from the Agreement whether or not the alleged defects in the basement walls, and the foundation generally, was one of the `items of dispute' at the time the parties entered the Agreement.
 {¶ 62} "Consequently, a question of fact is raised."
 {¶ 63} Judge Shaw then considered whether Appellants moving into the residence prior to full completion acted as acceptance. He examined the settlement agreement in great detail in this regard.
 {¶ 64} We must agree with Judge Shaw's reasoning in both respects and find that material facts prevented granting the first Civ. R. 56 Motion as to the 1995 Agreement.
 {¶ 65} The First Assignment of Error of Cross-Appellant is denied.
 {¶ 66} Judge Whitney reviewed the second motion for summary judgment relating to the 1995 settlement agreement and concurred with the reasoning of Judge Shaw.
 {¶ 67} We agree. The Second Assignment of Error of Cross-Appellant is denied.
 {¶ 68} Judge Shaw ruled on those arguments as to res judicata and the double dismissal rule.
 {¶ 69} He ruled:
 {¶ 70} "There is no doubt the Van Beusecums voluntarily dismissed Case No. 98-CV-H-10-346 pursuant to Civil Rule 41(A). The Van Beusecums' March 13, 2001 `Notice of Dismissal' plainly states that `plaintiffs hereby voluntarily dismiss their claims, without prejudice.' Voluntary dismissals pursuant to Civil Rule 41(A) are presumed dismissed without prejudice to the merits of the stated claims unless otherwise specified in the notice or order of dismissal. Civ. R. 41(A). Obviously, the Van Beusecums' Notice of Dismissal expressly preserved their claims. Nevertheless, the focus of attention should be placed on the dismissal of the Van Beusecums' cross-claims in Case No. 96-CV-H-05-172. If the dismissal of those cross-claims resulted voluntarily pursuant Civil Rule 41(A), then the `double dismissal' rule operates to bar litigation of the Van Beusecums' instant claims. Moreover, assuming the dismissal of the Van Beusecums' cross-claims did not result voluntarily, if the dismissal of those cross-claims operated as an adjudication upon the merits, then the doctrine of res judicata would also effectively bar litigation of the instant claims. Therefore, the center of controversy in Continental's instant Motion rests on the January 8, 1999 Judgment Entry in Case No. 96-CV-H-05-172 (the `January 8 Judgment Entry') dismissing the Van Beusecums' cross-claims.
 {¶ 71} "The first issue to resolve is whether or not the January 8 Judgment Entry of the Van Beusecums' cross-claims resulted voluntarily pursuant Civil Rule 41(A). Civil Rule 41(A) provides three means by which a plaintiff may voluntarily dismiss an action. Pursuant to Civil Rule 41(A)(1) a plaintiff may voluntarily dismiss by filing either a notice of dismissal or a stipulation of dismissal signed by all parties who have appeared in the action. Civ. R. 41(A)(1). A plaintiff may also voluntarily dismiss pursuant to Civil Rule 41(A)(2) by order of the court `at the plaintiff's instance.' Civ. R. 41(A)(2). In each of these three situations the plaintiff must affirmatively act to voluntarily dismiss the action.
 {¶ 72} "A review of the January 8 Judgment Entry fails to give any indication the Van Beusecums acted to voluntarily dismiss their cross-claims. The January 8 Judgment Entry states, in relevant part, that `[i]t appearing to the Court that the remaining issues in the above captioned case have been incorporated into Case No. 98-CV-H-10-346 * * * it is ORDERED that the instant case be dismissed.' As can be seen, there is no indication from the substantive language of the January 8 Judgment Entry Plaintiffs affirmatively acted to voluntarily dismiss their cross-claims.
 {¶ 73} "Moreover, there is nothing in the record of Ellison v.Continental Builders, Inc., Case No. 96-CV-H-05-172, showing that the Van Beusecums filed either a notice of dismissal or stipulation of dismissal pursuant to Civil Rule 41(A)(1), or, at their own instance, requested a voluntary dismissal by order of this Court pursuant to Civil Rule 41(A)(2). Indeed, a filing of dismissal pursuant to Civil Rule 41(A)(1) would have immediately divested this Court of jurisdiction to act further in Case No. 96-CV-H-05-172 and would have rendered the January 8 Judgment Entry moot.
 {¶ 74} "Consequently, there is no indication in the January 8 Judgment Entry as well as the record in Case No. 96-CV-H-05-172 evidencing that the Van Beusecums acted to voluntarily dismiss their cross-claims. Thus, this Court must conclude that the Van Beusecums did not, in any way, voluntarily dismiss their cross-claims.
 {¶ 75} "* * * Civil Rule 41(B)(1) requires a court, prior to dismissing an action upon its own motion, to give notice to the plaintiff's counsel of its intention to act pursuant to that Rule. There is nothing in the record of Case No. 96-CV-H-05-172 indicating that this Court gave such notice to the Van Beusecums' counsel. Inevitably, this Court must conclude that this failure to give such notice operated to the Van Beusecums' prejudice. Assuming such notice was given that this Court intended a Civil Rule 41(B)(1) dismissal it may have alerted the Van Beusecums to the effect of Civil Rule 41(B)(3). Of course, this stands as speculation. Nevertheless, the fact remains that no notice was given as expressly required by Civil Rule 41(B)(1).
 {¶ 76} "It was this Court's belief that entering the January 8 dismissal of the Van Beusecums' cross-claims would streamline and simplify the litigation between Van Beusecums and Continental. Certainly, the dismissal worked to Continental's advantage because it reduced the number of pending claims against which it must defend. Now Continental seeks to wield that dismissal to achieve its own ends. This tactic appears to fall within the technical bounds of the procedural rules. Whether or not it follows the spirit of cooperation and furthers the administration of fair justice is another matter. At any rate, this Court will not hold the effect of that January 8 dismissal against the merits of Plaintiff's instant claims. Therefore, this Court finds that Plaintiffs have voluntarily dismissed their claims against Defendant, Continental Builders, Inc. on only one prior occasion and that no prior dismissal operated as an adjudication upon the merits of those claims."
 III. {¶ 77} Again, we must agree with Judge Shaw and deny this Fourth Assignment of Error.
 {¶ 78} The standard as to granting or denying a motion for directed verdict is stated on Page 3 of this Opinion. Based upon such standard, we reject Cross-Appellant's Third Assignment of Error.
 {¶ 79} For the reasons stated herein, we affirm Appellant's Assignment of Error, vacate the directed verdict and remand this cause for further proceedings in accordance herewith.
Boggins, J., Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Delaware County, Ohio is reversed as to Appellant's Assignment of Error, affirmed as to the Cross-Appeal and remanded.
Costs to Appellee.