OPINION *Page 2 
{¶ 1} Plaintiffs-Appellants/Cross-Appellees, Frank and Lisa Van Beusecum ("Van Beusecums"), appeal the decision of the Delaware County Court of Common Pleas to grant the motion for remittitur and new trial filed by the Defendant-Appellee/Cross-Appellants, Continental Builders, Inc. ("Continental"), after a jury found in favor of the Van Beusecums and awarded damages in this home construction case. Continental appeals the decision of the trial court to grant the Van Beusecums' motion to amend their complaint during the trial, the jury verdict and the trial court's decision to deny its motion for judgment notwithstanding the verdict.
 STATEMENT OF THE CASE AND THE FACTS {¶ 2} In 1993, the Van Beusecums purchased a vacant lot located in Powell, Delaware County in order to build their "dream home". They received designs from an architect and in 1994, the Van Beusecums entered into a contract with Continental for the construction of their home. The contract price was $292,000.00.
 {¶ 3} Continental served as the general contractor of the construction project, hiring subcontractors as necessary to perform work on the home.
 {¶ 4} During the course of construction, the Van Beusecums observed water coming through the block foundation walls in the basement. They also noticed water-related problems with the stucco and dryvit exterior finish applications around the windows. The Van Beusecums notified Continental of their observations. Due to the problems, the Van Beusecums refused to release a draw payment which then prompted Continental to file a mechanic's lien on the house. *Page 3 
 {¶ 5} The parties resolved the matter by entering into a settlement agreement on July 21, 1995. Continental agreed to complete the construction of the home by August 18, 1995. The Van Beusecums agreed that they would not move into the home until they had fully paid Continental. The agreement further stated that if they moved in before fully paying Continental, they would be presumed to have accepted the house in its "as is" condition. (Joint Exhibits 1 and 2).
 {¶ 6} Delaware County issued a Certificate of Occupancy on August 18, 1995. The Van Beusecums then moved into the home, albeit without fully paying Continental.[1] After moving into the home, the Van Beusecums noticed water in the basement. They also observed issues with the foundation.
 {¶ 7} Litigation initially commenced in this matter in 1996, with a case filed in the Delaware County Municipal Court by a subcontractor on the project (Herschel Ellison, dba Ellison Painting v. ContinentalBuilders, Inc., et al.). The case was transferred to the Delaware County Court of Common Pleas wherein the Van Beusecums were named as defendants. The Van Beusecums filed a cross-claim against Continental. In 1998, the Van Beusecums filed a complaint for the same claims naming Continental as defendant (Case No. 98CV-H-10-346). The Van Beusecums dismissed their cross-claim in 1999.
 {¶ 8} In February 2000, the parties entered into another settlement agreement. Continental attempted to remedy the alleged problems, but failed to cure the defects to *Page 4 
the satisfaction of the Van Beusecums. The Van Beusecums observed that after the repairs were made, mold began growing in the basement. On March 13, 2001, the Van Beusecums dismissed their 1998 complaint and, on the same day, re-filed their complaint (Case No. 01-CV-H-03-138). In their complaint, the Van Beusecums claimed breach of the July 21, 1995 settlement agreement, failure to complete the home in a workmanlike manner, nuisance and breach of the February 2000 settlement agreement.
 {¶ 9} The case proceeded to trial on December 9, 2003. At the close of the Van Beusecums' case, the trial court granted Continental's motion for directed verdict. The Van Beusecums appealed the trial court's decision to this court. Continental also filed a cross-appeal, arguing the trial court erred when it denied its motion for summary judgment regarding the July 21, 1995 settlement agreement. We reversed the decision of the trial court as to the directed verdict and affirmed the decision to deny summary judgment. See, Van Beusecum v. ContinentalBuilders, 5th Dist. No. 04-CAE-01008, 2004-Ohio-7261. The matter was remanded for trial. Continental appealed our decision to the Ohio Supreme Court, which declined jurisdiction.
 {¶ 10} On September 14, 2005, State Farm Fire and Casualty Company filed a motion to intervene in the matter. The trial court denied the motion as being untimely. State Farm appealed the decision to this court and we affirmed the decision of the trial court. See, Van Beusecum v.Continental Builders, Inc., 5th Dist. No. 05CAE110072, 2006-Ohio-1025.
 {¶ 11} The case then proceeded to trial again on June 27, 2006. Both sides presented extensive lay and expert testimony regarding the continued filtration of water into the home's foundation. Continental disputed both liability and damages. After *Page 5 
several days of trial, the jury returned a verdict in favor of the Van Beusecums in the amount of $300,000. The verdict was tested by numerous interrogatories. The Van Beusecums filed a motion for pre-judgment interest, which the trial court denied. Continental filed motions for judgment notwithstanding the verdict, new trial and remittitur. The trial court denied the motions for judgment notwithstanding the verdict and new trial, but granted the motion for remittitur. The trial court found the jury did not make a finding as to whether or not the Van Beusecums failure to mitigate was taken into consideration in their overall verdict. (Judgment Entry, December 13, 2006). The trial court then held it must "determine whether or not Plaintiffs failed to mitigate their damages." Id. at 5. It then found the Van Beusecums failed to mitigate their damages as evidenced by the expert testimony from the first and second trial. Based upon its findings, it reduced the Van Beusecums' award from $300,000.00 to $153,513.00. In its judgment entry, the trial court failed to give the Van Beusecums' the opportunity to choose to accept the remittitur or receive a new trial.
 {¶ 12} On April 18, 2007, the trial court issued a judgment entry acknowledging that it had failed to clarify that the Van Besusecums had the choice of accepting the remittitur or receiving a new trial. (Judgment Entry, April 18, 2007). The trial court stated the Van Beusecums declined the remittitur and therefore ordered a new trial. It is from these decisions the parties now appeal.
 {¶ 13} Appellants raise one Assignment of Error:
 {¶ 14} "I. THE TRIAL COURT ERRED BY ORDERING A NEW TRIAL AFTER IT SUBSTITUTED A LOWER AMOUNT FOR THE JURY'S AWARD AND PLAINTIFFS *Page 6 
REFUSED TO ACCEPT THE REDUCED AMOUNT. [TRIAL COURT'S POST-JUDGMENT ENTRY, FILED DECEMBER 13, 2006.]"
 {¶ 15} Cross-Appellants raise four Assignments of Error:
 {¶ 16} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLEE/CROSS-APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL.
 {¶ 17} "II. THE JURY'S VERDICT IS CONTRARY TO LAW.
 {¶ 18} "III. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 19} "IV. THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT TO INCLUDE A CLAIM FOR MOLD UNDER COUNT FOUR. (NUISANCE)"
 {¶ 20} For ease of organization, we will first address Continental's fourth Assignment of Error; then Continental's first, second and third Assignments of Error together with the Van Beusecums' sole Assignment of Error.
 Cross-Appeal IV. {¶ 21} Continental argues in its fourth Assignment of Error that the trial court erred in allowing the Van Beusecums to amend their complaint during trial to dismiss Count 5 of their complaint regarding the breach of the February 2000 settlement agreement and to then incorporate the claim of mold under their nuisance claim in Count 4.
 {¶ 22} It is within the trial court's discretion whether to allow the amendment of a complaint. Natl. Bank of Fulton Cty. v. Haupricht Bros.,Inc. (1988), *Page 7 55 Ohio App.3d 249, 251, 564 N.E.2d 101. Accordingly, we will not reverse the decision of a trial court absent an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 23} Civ. R. 15(B) provides:
 {¶ 24} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment." * * *
 {¶ 25} We do not find the amendment pursuant to Civ. R. 15(B) resulted in a substantial change in the theory of the case. Count 5 of the complaint alleged that Continental had breached the 2000 settlement agreement by failing to pay for the mold damage. When the Van Beusecums withdrew Count 5, the breach of contract claim under the 2000 settlement agreement was eliminated, but the claim for mold damage remained, just under Count 4 sounding in nuisance. We find there was no prejudice to Continental in permitting the amendment. Thus, the trial court did not err when it permitted the Van Beusecums to amend their complaint to conform to the evidence.
 {¶ 26} Continental's fourth Assignment of Error is overruled.
 Cross-Appeal I., II., III., Appeal I {¶ 27} Continental argues in its first, second and third Assignments of Error that the trial court erred in denying its motion for judgment notwithstanding the verdict or, in *Page 8 
the alternative, for new trial; that the jury verdict was contrary to law; and that the jury verdict was against the manifest weight of the evidence.
 {¶ 28} For purposes of simplicity, we will discuss the law regarding these arguments in general before addressing the specific Assignments of Error.
 JUDGMENT NOTWITHSTANDING THE VERDICT ("JNOV") {¶ 29} Civ. R. 50(B) governs motions for judgment notwithstanding the verdict. It provides:
 {¶ 30} "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."
 {¶ 31} When ruling on a motion for judgment notwithstanding the verdict, a trial court applies the same test as in reviewing a motion for a directed verdict. Ronske v. Heil Co., Stark App. No. 2006-CA-00168, See also, Pariseau v. Wedge Products, Inc. (1988),36 Ohio St. 3d 124, 127, 522 N.E.2d 511. "A motion for judgment *Page 9 
notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict."Krauss v. Streamo, Stark App. No. 2001CA00341, 2002-Ohio-4715, paragraph 14; see also, McLeod v. Mt. Sinai Medical Center (2006),166 Ohio App. 3d 647, 853 N.E.2d 1235, reversed on other grounds, 116 Ohio St.3d 139,876 N.E.2d 1201. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275,344 N.E.2d 334. See, also, Civ. R. 50(B); and Osler v. Lorain (1986),28 Ohio St.3d 345, 347, 504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. Osler, supra.
 {¶ 32} Appellate review of a ruling on a motion for judgment notwithstanding the verdict is de novo, Midwest Energy Consultants,L.L.C. v. Utility Pipeline, Ltd., 5th Dist. App. No. 2006CA00048,2006-Ohio-6232; Ronske v. Heil, supra.
 NEW TRIAL {¶ 33} Continental argues in the alternative, it should be granted a new trial pursuant to Civ. R. 59(A)(5), (6), (7) and/or (9). Civ. R. 59 states in pertinent part:
 {¶ 34} "(A) A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 35} "* * *;
 {¶ 36} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property; *Page 10 
 {¶ 37} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 38} "(7) The judgment is contrary to law;
 {¶ 39} "* * *;
 {¶ 40} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 {¶ 41} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown. * * *"
 {¶ 42} In reviewing a trial court's decision regarding a motion for new trial, we use the abuse of discretion standard, Sharp v. Norfolk Western Railway Company, 72 Ohio St. 3d 307, 1995-Ohio-224,649 N.E. 2d 1219. This court may not disturb a trial court's decision unless we find the decision was unreasonable, unconscionable, or arbitrary, Id., citing Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217.
 MANIFEST WEIGHT {¶ 43} It is axiomatic that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus; Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533. Furthermore, in considering whether a judgment is against the manifest weight of the evidence, it is important that this court be guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co.,Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80, *Page 11 10 OBR 408, 461 N.E.2d 1273. If the evidence is susceptible of more than one interpretation, we must construe the evidence consistently with the trial court's judgment. Gerijo, 70 Ohio St.3d at 226, 638 N.E.2d 533.
 {¶ 44} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 "AS IS" CLAUSE {¶ 45} Continental's first argument centers on the July 21, 1995 Settlement Agreement ("Agreement"). Section 4 of the Agreement states in pertinent part:
 {¶ 46} "4. VanBeusecum [sic] agree that they will not move into the House until it is fully completed (except punch list items) and VanBeusecum [sic] have fully paid Continental Builders under the Contract and this Agreement. In the event that VanBeusecum [sic] move into the House, they shall be irrebutably [sic] presumed to have accepted the House and related construction under the contract in its as is *Page 12 
condition (except for punch list items), and all sums under the Contract and this Agreement shall be immediately due and payable. * * *"
 {¶ 47} Continental presented evidence at trial by way of its affirmative defense that Continental had performed its material obligations under the Agreement, but the Van Beusecums failed to pay Continental in a timely manner before moving into the home, in violation of the original contract and, more specifically, Section 4 of the Agreement. Continental argued that pursuant to Section 4 of the Agreement, the Van Beusecums' failure to pay resulted in them being irrebuttably presumed to have accepted the home in an "as is" condition as a matter of law. Therefore, Continental argues, the jury verdict and answers to jury interrogatories in favor of the Van Beusecums were against the sufficiency of the evidence, against the manifest weight of the evidence and contrary to law.
 {¶ 48} We note that the trial court and this Court have previously analyzed Section 4 of the Agreement. On June 13, 2001, Continental filed a motion for summary judgment arguing that because the Van Beusecums moved into the home prior to its full completion and without fully paying Continental, the irrebuttable presumption/"as-is" provision of the Agreement would preclude the Van Beusecums' litigation. The trial court denied Continental's motion for summary judgment on September 24, 2001. It examined the Agreement and found as follows:
 {¶ 49} "* * *, difficulties exist with the enforceability of the provisions upon which it relies. The Agreement prohibits the Van Beusecums from moving into the house prior to its full completion. The Agreement also provides that `Continental Builders agrees to *Page 13 
use its commercially reasonable efforts to substantially complete construction (except punch list items) of the house on the Premises (`House') by August 18, 1995.'"
 {¶ 50} The trial court went on to find that because substantial completion of a construction contract is less than full completion and the Agreement is silent on the question of how the house attains full completion, the house may never attain full completion and the Van Beusecums could be forever barred from moving into their home. (Judgment Entry, September 24, 2001). It further found that upon comparison of the different provisions of the Agreement regarding "substantial completion," "Defendants have promised to substantially complete a house that the Agreement recognizes is substantially completed. In other words, Defendants have promised to do something, yet nothing at all." Id. at 7. The trial court found the promise of substantial completion to be illusory. It then denied the motion for summary judgment, but stated, "this Court finds the language of the Agreement ambiguous, unclear, and illusory. Thus, questions of fact exist as to the intention of the parties to this Agreement. Consequently, this Court is unable to enforce the Agreement due to the uncertainty in the language in the Agreement." Id. at 8.
 {¶ 51} The matter was appealed to this Court. We affirmed the trial court's decision to deny summary judgment as to Section 4. SeeVan Beusecum v. Continental Builders, 5th Dist. No. 04-CAE-01008,2004-Ohio-7261.
 {¶ 52} At trial, the issue arose as to whether the trial court and this court found the Section 4 to be illusory and therefore unenforceable in its entirety, or whether the *Page 14 
trial court just referred to the portion of the Section 4 that referenced full completion.[2] After a lengthy discussion, the trial court determined that it was only the portion of Section 4 that referenced full completion that was illusory. (T. 247-301). The trial court found that portion of Section 4 that referenced the Van Beusecums' duty to fully pay Continental before moving in was not illusory and would remain for the jury's determination under Continental's affirmative defenses. Id. In that regard, the trial court instructed the jury as follows:
 {¶ 53} "* * * Paragraph 4 of Exhibit D, you might want to make note, includes the following provision:
 {¶ 54} "Van Beusecum agreed that they would not move into the house until it is fully completed, parenthetical, except punch list items, end parenthetical, and . . .
 {¶ 55} "This provision of Exhibit D has been determined to be illusory and unenforceable and must be disregarded by you, the Jury.
 {¶ 56} "It will be for your determination based upon the evidence that you have heard and will hear and the law which will be given to you at the end of the evidence what relevance, if any, the remainder of Joint Exhibit No. 2 has to the Plaintiffs' claims and any affirmative defenses asserted by the Defense." (Vol. II, T. p. 304).
 {¶ 57} As an initial matter, based upon the trial court's denial of Continental's motion for summary judgment and our affirmance thereof, we find Section 4 of the Agreement in this case to be ambiguous. If the contract is clear and unambiguous, its interpretation is a matter of law, and there is no issue of fact to determine. Inland *Page 15 Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271, citing Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403,374 N.E.2d 146, However, where the contract language is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact. Ohio Historical Soc. v. Gen.Maint. Eng. Co. (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340.
 {¶ 58} The jury returned with a general verdict for the Van Beusecums. The jury also answered fifteen interrogatories which ultimately determined the specific issues contended by the parties. "The underlying purpose of jury interrogatories is to `test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." Lewis v. Nease, 4th Dist. No. 05CA3025,2006-Ohio-4362. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented. Ziegler v. WendelPoultry Serv., Inc. (1993), 67 Ohio St.3d 10, 15 (citations omitted).
 {¶ 59} Interrogatories were presented to the jury regarding Continental's affirmative defenses. In Interrogatory #6, the jury found that Continental failed to prove by a preponderance of the evidence that it had performed its material obligations under the Agreement. The jury next found in Interrogatory #8, Continental failed to prove by a preponderance of the evidence that the Van Beusecums accepted the residence in "as is" condition pursuant to the terms of the Agreement. The jury found in Interrogatory #9 that Continental proved that the Van Beusecums' failure to make payment to Continental in a timely manner represented a material breach of the contract. Finally, in *Page 16 
Interrogatories #10, #11, and #12, the jury found Continental failed to prove that the Van Beusecums' claims were barred by the doctrines of waiver, estoppel and/or accord and satisfaction.
 {¶ 60} Upon review of the record in this case, we find the jury's answers to the interrogatories to be indicative of the ambiguities of the Agreement and are supported by the evidence presented in this case. Reasonable minds could come to differing conclusions as to the parties' duties under the Agreement and their resulting actions. As stated in our previous ruling, "Such agreement essentially provided for the elimination of the water problem in addition to other matters. Since evidence was presented as to the continuation of it, a jury could determine that such agreement in that respect was breached."Van Beusecum, supra, at ¶ 48.
 CALCULATION OF DAMAGES {¶ 61} Continental's next argument deals with the issue of the calculation of damages. Continental argues that evidence was adduced as to the cost of repairs as of the time of trial, as opposed to evidence of damages which could be calculated at the time of the alleged breach in 1995. The Van Beusecums' damages expert presented evidence that in June 2006, he estimated it would cost $325,430 to repair the damages to the home.
 {¶ 62} It is well-settled that the cost of repairs is the proper measure of damages for construction defects. Barton v. Ellis (1986),34 Ohio App.3d 251, 253, 518 N.E.2d 18. Stated differently, the proper measure of damages is the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into *Page 17 
the contract. Sites v. Moore (1992), 79 Ohio App.3d 694,607 N.E.2d 1114, motion to certify overruled in (1992), 65 Ohio St.3d 1465,602 N.E.2d 1173.
 {¶ 63} Continental asserts the correct measure of damages is the cost of repairs at the time of the breach. We disagree. First, the cases cited by Continental in support of its argument involve home improvement contracts, not new home construction. Second, in the situation of breach of contract in new home construction, it is the prevailing rule that the measure of damages is the reasonable cost of repairs to place the home in the condition contemplated by the parties at the time they entered into the contract. Courts have not specifically limited the calculation of the reasonable cost of repairs at the time of the breach. See,Daniels v. Albert J. Corey Co. (1965), 2 Ohio App.2d 297, 298;Sites, supra; Yocono v. A.R. Lockhart Develop. Co. (July 31, 1991), 9th Dist. No. 1977; Lavelle v. Lee A. Gettling, Inc. (Mar. 15, 2001), 8th Dist. No. 77684; Ballard v. Biskind (Dec. 19, 1985), 8th Dist. No. 49805; Chess v. Scott (Dec. 23, 1994), 11th Dist. No. 94-P-0044; Jones v. Honchell (1984), 14 Ohio App.3d 120.
 {¶ 64} We find that pursuant to the above-stated law, it was not error for the jury to consider evidence of what it would reasonably cost in 2006 to repair the defects and place the home in the condition contemplated by the parties at the time they entered into the contract.
 {¶ 65} Continental next argues the jury's award of $46,000 for repair the stucco and dryvit on the exterior of the house and $5,000 to repair the windows of the home were against the manifest weight of the evidence. Upon review of the record, we find the jury did not lose its way on these issues so as to create such a manifest miscarriage of justice that the judgment must be reversed. *Page 18 
 FAILURE TO MITIGATE DAMAGES {¶ 66} Continental finally argues that it was error to deny its motions for jnov and new trial based on the jury's decision to award damages to the Van Beusecums and their seemingly contradictory decision regarding the Van Beusecums' failure to mitigate their damages. Continental raised as an affirmative defense the Van Beusecums' failure to mitigate their damages. Continental argues the evidence at trial was clear that the Van Beusecums' permitted the water infiltration issues to go unabated for over ten years, the clearest example of this being the mold damage the Van Beusecums claimed to have occurred after the breach of the 2000 settlement agreement. Further, Continental states the jury answered the following interrogatory in the negative:
 {¶ 67} "Do you find, by a preponderance of the evidence, that Plaintiffs used reasonable diligence, efforts and means under all the circumstances to avoid or lessen damages, and prevent aggravation of those injuries they alleged to have suffered." (Interrogatory #14).
 {¶ 68} In the Van Beusecums' sole Assignment of Error, they argue the trial court erred in granting a remittitur because it found the jury did not consider the Van Beusecums' failure to mitigate their damages. On the concept of remittitur, it has been previously held:
 {¶ 69} "Though the trial court is prohibited from substituting its own judgment as to damages for that of the jury, the jury's decision is not inviolate. The legal concept of remittitur was developed to provide the trial court with the procedural mechanism by which it could adjust or correct an unjust award. However, prior to doing so, the damages awarded by the jury must be `so manifestly against the weight of the evidence *Page 19 
to show a misconception by the jury of its duties.' Howard v. City Loan Savings (Mar. 27, 1989), 2nd Dist. App. No. 88-CA-39, unreported, at 6-7, 1989 WL 33137. `Remittitur is only proper where a court can affirmatively find that the jury's verdict is manifestly excessive.'Uebelacker v. Cincom Systems, Inc. (1992), 80 Ohio App.3d 97, 103,608 N.E.2d 858, 862. See, also, Scott v. Hall (Sept. 9, 1988), 2nd Dist. App. No. 10921, unreported, at 5, 1988 WL 93668.
 {¶ 70} "While recognizing the above presumption in favor of sustaining the jury's verdict, we must also be cognizant of our standard of review in this case. At issue is whether, given the deference the trial court was required to give to the jury's verdict, the trial court abused its discretion in granting the remittitur. To demonstrate an abuse of discretion, it must be shown that the trial court's decision was unreasonable, arbitrary or unconscionable. In re Adoption ofRidenour (1991), 61 Ohio St.3d 319, 320, 574 N.E.2d 1055, 1057."Betz v. Timken Mercy Med. Ctr. (1994), 96 Ohio App.3d 211, 218.
 {¶ 71} The failure to mitigate damages is an affirmative defense in Ohio. Young v. Frank's Nursery Crafts, Inc. (1991), 58 Ohio St.3d 242,244, 569 N.E.2d 1034. The burden of proving a failure to mitigate damages lies with the party asserting the defense. Hines v. Riley
(1998), 129 Ohio App.3d 379, 717 N.E.2d 1133. It has been held that reasonable efforts must be made to mitigate damages, not extraordinary efforts. Id.
 {¶ 72} Failure to minimize damages only reduces the amount recoverable; it does not bar recovery. A.B. B. v. Banfi ProductsInc. (1991), 71 Ohio App.3d 650, 657. When the plaintiff fails to mitigate, the plaintiff is only precluded from recovering damages that could have been avoided by mitigation. Id. *Page 20 
 {¶ 73} In its judgment entry granting Continental's motion for remittitur, the trial court stated, "The jury found that plaintiff's failed to mitigate their damages; however, the jury did not make a finding as to whether or not plaintiff's failure to mitigate was taken into consideration in their overall verdict." (Judgment Entry, Dec. 13, 2006). The trial court went on to determine whether the Van Beusecums mitigated their damages. In making its determination, the trial court considered the difference between the expert's evaluation of damages from the first trial in 2003 and the second trial in 2006. The estimated cost of repair increased by $106,430.00 from 2003 to 2006. The trial court also found that mold remediation would cost $23,000.00. It was the trial court's opinion that the increase in costs demonstrated the Van Beusecums failed to mitigate their damages from the first trial to the second trial. It therefore reduced the $300,000.00 verdict by $129,430.00. Because the jury found the Van Beusecums to be contributively negligent by 10%, the trial court further reduced the verdict, resulting in a total award of $153,513.00.
 {¶ 74} Upon review of the record in this matter, we find the trial court abused its discretion in finding the jury failed to take into consideration the Van Beusecums' failure to mitigate in the jury's overall verdict. First, the trial court gave the jury an instruction on the affirmative defense of failure to mitigate and how damages should be calculated should Continental prove that the Van Beusecums failed to mitigate their damages. (T. 1434-1435, 1439). Specifically, the jury was instructed: "If the Defendant proves by a preponderance of evidence that the Plaintiffs did not make reasonable efforts under the facts and circumstances in evidence to avoid loss or lessen damages caused by the Defendant's actions or inactions, you should not allow damages that could have been *Page 21 
avoid by reasonable efforts to avoid less." (T. 1434-1435). It must be presumed the jury followed the court's instruction. State v. Loza
(1994), 71 Ohio St.3d 61, 79, 641 N .E.2d 1082.
 {¶ 75} Second, Interrogatory #15 permitted the jury to provide a specific calculation of compensatory damages if it found the Van Beusecums were entitled to recover. During the trial, the Van Beusecums presented evidence of the damages to their personal property due to mold. (T. 237-238, 306-307, 1296). On Interrogatory #15, the jury did not award the Van Beusecums any damages to personal property. Further, the Van Beusecums' expert testified it would cost $325,430 to repair the home in 2006. The jury awarded $197,000 for cost of repairs. (Interrogatory #15). Notably, this interrogatory did not require the jury to first calculate the total damages and then calculate the amount of reduction for the failure to mitigate. But Interrogatory #15 does give insight as to the jury's consideration of mitigation in determining damages.
 {¶ 76} In sum, we find the trial court erred in granting Continental's motion for remittitur, but did not err in denying Continental's motions for judgment notwithstanding the verdict and new trial.[3]
 {¶ 77} Accordingly, Continental's first, second and third Assignments of Error are overruled. The Van Beusecums' sole Assignment of Error is sustained. *Page 22 
 {¶ 78} For the foregoing reasons, the judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part. The judgment entered in the Delaware County Court of Common Please ordering a new trial of this matter based on the Van Beusecums' rejection of the remittitur is reversed and we hereby reinstate the jury's verdict and enter judgment as a matter of law in favor of the Van Beusecums in the amount of $300,000, pursuant to App. R. 12(B), to bring finality to this matter.
Delaney, J., Hoffman, P.J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part. The judgment entered in the Delaware County Court of Common Please ordering a new trial of this matter based on the Van Beusecums' rejection of the remittitur is reversed and we hereby reinstate the jury's verdict and enter judgment as a matter of law in favor of the Van Beusecums in the amount of $300,000, plus interest at the statutory rate from the date of the original judgment on July 28, 2006, and court costs, pursuant to App. R. 12(B).
Costs assessed to Defendant-Appellee/Cross-Appellant.
[1] Lisa Van Beusecum testified the family "had no choice" but to move in the house as the family had no other place to stay, and the children were due to start school. The family had been living with her parents who lived an hour and half away. She also had taken a leave of absence from work and had to get back to her employment.
[2] We note that the original judge assigned to this matter retired during the pendency of the action. The trial judge that originally ruled on the summary judgment motions did not preside over either trial. The parties did renew their motions for summary judgment and the trial court followed the original holding.
[3] On April 18, 2007, the trial court did grant a new trial based upon the Van Beusecums' rejection of the remittitur. *Page 1